UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-103-GWU

LUCY MCKISSIC, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Lucy McKissic brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that McKissic, a 35-year-old former bagger, cook, waitress, and bakery worker with a high school education, suffered from impairments related to the residuals of being status post closed head injury, discogenic and degenerative disorders of the back, situational depression and anxiety. (Tr. 12, 18). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 17-18). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 19-20). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to light level work, restricted from a full range by

non-exertional restrictions such as (1) an inability to ever climb or crawl; (2) an inability to more than occasionally stoop, bend or crouch; (3) an inability to sit or stand for more than one hour; (4) a need to avoid exposure to unprotected heights or hazardous machinery and equipment; and (5) a limitation to simple instructions in a non-public setting. (Tr. 42-43). In response, Ellis identified a significant number of jobs in the national economy which could still be performed including inspector/tester (49,000 national jobs) and packing and filling machine operator (103,000 jobs). (Tr. 43). The ALJ later added restrictions concerning no contact with the general public and no more than occasional and casual contact with co-workers and supervisors. (Tr. 43-44). The witness indicated that the aforementioned jobs base would not be reduced. (Tr. 44). Therefore, assuming that the vocational factors considered by Ellis fairly characterized McKissic's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. William Lester treated McKissic for neck and shoulder pain and headaches following a work-related accident in the spring of 2007. (Tr. 361-381). An April MRI scan of the plaintiff's brain was normal. (Tr. 375). An MRI scan of the cervical spine revealed mild disc protrusions at C4-C5 and C5-C6. (Tr. 376). In May of 2007, the claimant was temporarily restricted

from working. (Tr. 366-367). She was later released to perform light level duty. (Tr. 365). In June of 2007, Dr. Lester indicated she could resume regular work duty without work limitations. (Tr. 363). The ALJ's findings are consistent with the opinion of this treating source.

In August of 2007, Dr. Rajiv Naval Srinivas,[1] a treating physician at the Kate Ireland Healthcare Center, released McKissic to return to work with no restrictions. (Tr. 890). Treatment records from Kate Ireland do not indicate that the physician later changed his opinion. (Tr. 758-781). Thus, Dr. Srinivas also does not support the plaintiff's disability claim.

The record reveals that McKissic was hospitalized at Marymount Medical Center in April of 2007 following a work-related fall from a ladder. (Tr. 251). She was diagnosed as suffering from contusions to the face, scalp, neck and back, neck sprain, lumbar spine sprain, backache, cervicalgia and a head injury. (Id.). More severe long-term physical restrictions than those found by the ALJ were not imposed by the hospital staff. (Tr. 251-328).

In July of 2007, McKissic was again hospitalized at Marymount following complaints of seizures and abnormal behavior. (Tr. 422). Following a neurological work-up, the patient was diagnosed with a conversion disorder, hypopotassemia,

---

[1] The physician appears to have been known to the patient as Dr. Naval. (Tr. 199-201).

and headaches. (Tr. 418, 423). More severe long-term physical restrictions than those found by the ALJ were not identified. (Tr. 417-463).

Dr. Robert Hoskins examined McKissic in September of 2007. Dr. Hoskins noted that an MRI scan of the brain was normal and an MRI scan of the cervical spine revealed C4-C5 and C5-C6 disc protrusions. (Tr. 881). A CT scan of the head was normal. (Id.). The doctor diagnosed C4-C5 and C5-C6 central disc protrusions, cervical sprain/strain, post-concussion headaches, and right periscapular myofascial pain syndrome. (Id.). Dr. Hoskins opined that the plaintiff would not be able to return to her past relevant work. (Tr. 882). The physician indicated that the claimant would be restricted by an inability to lift more than 30 pounds, an inability to perform prolonged or repetitive overhead work, an inability to perform heavy pushing, pulling or carrying and an inability to climb or balance. (Tr. 883). These are somewhat different restrictions than those found by the ALJ but are not necessarily totally disabling.[2] The claimant has not argued that the ALJ's failure to fully adopt Dr. Hoskins's opinion was reversible error. Furthermore, the doctor was outweighed and offset by the opinions of treating sources such as

---

[2]The physical restrictions indicated by Dr. Hoskins were considered by Ralph Crystal, a vocational expert who evaluated the plaintiff in connection with a Worker's Compensation claim. Crystal indicated that one so restricted could still perform a significant number of jobs. (Tr. 857-859).

Dr. Lester and Dr. Srinivas. Therefore, this opinion also does not support the plaintiff's disability claim.

In October of 2007, McKissic was treated at Baptist Regional Medical Center. An EEG was normal with no signs of an epilepsy. (Tr. 466). Physical restrictions were not imposed. (Tr. 464-469). Therefore, this opinion does not provide support for the plaintiff's disability claim.

Dr. Barry Burchett examined McKissic in April of 2008. The doctor noted complaints of headache, memory problems, a panic disorder, and possible seizures since the April, 2007 injury. (Tr. 682). Dr. Burchett indicated that his neurological examination results were largely normal with the exception of some radicular symptoms in the right lower extremity. (Id.). Dr. Burchett did not identify the existence of long-term physical restrictions. (Tr. 678-685). Therefore, this opinion also does not support the plaintiff's disability claim.

Dr. Carlos Hernandez (Tr. 686-693) and Dr. Sudhideb Mukherjee (Tr. 721-728) each reviewed the record and opined that McKissic was capable of performing medium level work restricted from a full range by an inability to ever climb ladders, ropes or scaffolds and a need to avoid exposure to hazards. The hypothetical factors were consistent with these opinions.

In September of 2008, McKissic was admitted to Manchester Memorial Hospital with complaints of chest pain. (Tr. 738). A chest x-ray was normal. (Id.).

An electrocardiogram revealed non-specific ST changes. (Id.). A nuclear scan showed small anteroseptal ischemia but revealed no sign of myocardial infarction. (Id.). Liver function testing was within normal limits. (Id.). Acute myocardial infarction was ruled out. (Id.). Physical restrictions were not identified. (Tr. 738-749). Thus, this opinion does not suggest that the plaintiff was more physically impaired than found by the ALJ. Therefore, this and the aforementioned medical evidence support the administrative decision.

McKissic asserts that the ALJ erred in evaluating the evidence of record pertaining to her physical condition because he did not consider whether a December 15, 2008 MRI scan of her lumbar spine indicated she met the requirements of § 1.04 of the Listing of Impairments concerning disorders of the spine. This Listing section requires a claimant to show:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia,

> resulting in the need for changes in position or posture more than once every 2 hours;
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness, resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. The MRI scan in question revealed diffuse disc bulging at L4-L5 with broad-based disc protrusion and moderate spinal stenosis and mild disability bulge at L5-S1 with broad-based right posterolateral disc protrusion and moderate compromise of the right lateral recess. (Tr. 757). As noted by the defendant, the MRI scan does not reveal nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication as required by the Listing. The claimant does not identify other evidence to support her claim that the Listing was met. Therefore, the court finds no error.

McKissic also argues that the ALJ erred by failing to consider the very severe physical restrictions identified by Dr. Marc Acob, a treating source, which would limit her to less than a full range of sedentary level work. (Tr. 912). However, as noted by the defendant, Dr. Acob's opinion was never before the ALJ and, so, he could not possibly have considered it. The record indicates that Dr. Acob's assessment was submitted for the first time to the Appeals Council. (Tr. 4). This action raises an issue concerning a remand for the taking of new evidence before the Commissioner. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).

A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g).  The statute provides that a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding.  <u>Sizemore v. Secretary of Health and Human Services</u>, 865 F.2d 709, 710 (6th Cir. 1988).  In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  <u>Sizemore</u>, 865 F.2d at 711.  In the present action, the claimant has not met her burden of proof by adducing arguments as to why "good cause" exists in submitting this record into evidence.  The document is dated May 5, 2009, more than four months before the ALJ issued his denial decision on September 28, 2009.  (Tr. 912).  The undersigned sees no reason why this evidence could not have been submitted in a timely manner.  Therefore, the court must reject the plaintiff's argument.

The ALJ also dealt properly with the evidence of record relating to McKissic's mental condition.  The plaintiff was examined by Dr. David Shraberg in May of 2007.  (Tr. 827-837).  Dr. Shraberg opined that the claimant did not suffer from a neuropsychiatric impairment and imposed no mental limitations.  (Tr. 832).  In

14

October of 2007, the doctor reported having reviewed additional medical records concerning McKissic and indicated that these did not change his opinion concerning her mental condition. (Tr. 824). The ALJ's findings were compatible with Dr. Shraberg's opinion.

Psychologists Jay Athy (Tr. 665-666) and Ed Ross (Tr. 703-704) each reviewed the record and opined that McKissic would be "moderately limited" in such areas as maintaining attention and concentration for extended time periods, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting.[3] The ALJ's findings were essentially consistent with these opinions.

McKissic was hospitalized at the Baptist Medical Center in November of 2007 with complaints of experiencing auditory and visual hallucinations. (Tr. 474). A dissociative disorder due to post concussion syndrome was suspected. (Tr. 475). She was discharged after experiencing improvement in her abnormal behavior. (Tr. 474). Long-term mental restrictions were not assessed by the Baptist Medical Center staff. (Tr. 470-610). Thus, this report does not support the existence of more severe mental limitations than those found by the ALJ.

---

[3]Athy also indicated that the claimant would be "moderately" limited in the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable length and number of rest periods. (Tr. 666).

McKissic argues that the ALJ erred by failing to credit the opinion of Dr. Rachel Vasquez, a treating source at Cumberland Family Behavioral Health. In May of 2008, Dr. Vasquez opined that the plaintiff's mental problems would preclude her from being gainfully employed. (Tr. 701). The ALJ concluded that the doctor's opinion was not well supported in the record since the physician's own treatment notes indicated continuing improvement over time and was contrary to the opinions of other medical professionals of record. (Tr. 18). Treatment records from Cumberland Family Behavioral Health reveal that the claimant was said to be doing well on her medications in December of 2007. (Tr. 618). Her Global Assessment of Functioning (GAF) was rated at 60 to 65. (Tr. 628). Such A GAF suggests the existence of only "mild to moderate" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. Furthermore, Dr. Vasquez's disability opinion is not binding on the ALJ. 20 C.F.R. § 404.1527(e)(1). Therefore, the court finds that the ALJ properly rejected the opinion of Dr. Vasquez.

McKissic also asserts the ALJ erred by failing to consider whether she could meet the durational requirements for substantial gainful activity. The plaintiff cites the Ninth Circuit Court of Appeals case of Gatliff v. Commissioner of Social Security, 172 F.3d 690 (9th Cir. 1999). However, in Gatliff, the record contained considerable evidence that the claimant would not be able to maintain employment more than a

couple of months and the ALJ had even acknowledged this fact.  <u>Gatliff</u>, 172 F.3d at 692.  In the present action, McKissic has not identified similar evidence suggesting that she would not be able to maintain employment.  Therefore, the court must reject the plaintiff's argument.

Finally, McKissic asserts that the ALJ failed to consider the combination of her impairments.  However, the court has already found that the vocational factors presented to the vocational expert fairly depicted the plaintiff's condition.  Thus, the ALJ implicitly considered the combination of her impairments.  Therefore, the court rejects the claimant's argument.

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 5th day of January, 2011.

**Signed By:**
<u>**G. Wix Unthank**</u>
**United States Senior Judge**